IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JHONNY JOSE TORRES FOLIACO,
Petitioner,

v.

DAVID VENTURELLA, et al.,
Respondents.

Case No. 26-cv-13814-CRB

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

Petitioner Jhonny Jose Torres Foliaco was detained by federal immigration agents this morning. Memo. in Supp. of Pet.'s Ex Parte Mot. for TRO ("TRO Mem.") (dkt. 4) at 7. He filed a petition for writ of Habeas Corpus, Pet. (dkt. 1), and now asks this Court for emergency relief, claiming his detention violates his due process rights, TRO Mem. at 1–2. He requests a temporary restraining order ("TRO") requiring his immediate release from custody, protecting him from further arbitrary detention, and prohibiting the government from transferring him out of the District or removing him from the country until these habeas proceedings have concluded. Id. at 23. The Court GRANTS Petitioner's motion.

## I. BACKGROUND

Petitioner is a Venezuelan national who arrived in the United States sometime around July 2021. Pet ¶ 18. He applied for asylum with U.S. Citizenship and Immigration Services ("USCIS") in March 2022. Decl. of Neriz Zenit Tovar Moncada ("Moncada Decl.") (dkt. 4-1) ¶ 3. His application is still pending. TRO Mem. at 12. While awaiting a determination on his application, Petitioner has put down roots. He has a work permit and is employed by Amazon Flex as a delivery driver. Moncada Decl. ¶ 4; TRO Mem. at 8.

United States District Court
Northern District of California

Through this work, Petitioner serves as the primary provider for his family—his wife of five years and their two children. Moncada Decl. ¶¶ 2, 4, 6. Petitioner lives with his wife and kids in Daly City, along with Petitioner's father, who has Alzeimer's disease and diabetes and requires considerable care. Id. ¶¶ 4, 6.

Petitioner has health issues of his own. He was recently hospitalized for almost two weeks for diverticulitis and is awaiting surgery for the illness. Id. ¶ 7. Without surgery, his condition could prove life-threatening. Id.

Petitioner was at work this morning, in route to a delivery, when immigration agents pulled him over and detained him. Id. Petitioner claims the immigration agents showed him no warrant or other document and took his wallet and ID. Id.

Petitioner has no criminal history. Pet. ¶ 18. He is aware of no individualized custody determination and no Notice to Appear with an immigration court related to his detention. Id. ¶ 52.

## II. LEGAL STANDARD

A party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Washington v. Trump, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied." Friends of the Wild Swan v. Weber, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." Nken v. Holder, 556 U.S. 418, 435 (2009).

Courts issue TROs to preserve the status quo and prevent irreparable harm "just so long as is necessary to hold a [preliminary injunction] hearing and not longer." E. Bay Sanctuary Covenant v. Trump, 932 F.3d 742, 779 (9th Cir. 2018) (quoting Granny Goose

United States District Court
Northern District of California

Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty., 415 U.S. 423, 439 (1979)).

Under Rule 65(b), Courts can grant TROs without written or oral notice to the adverse party only when "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). "When granting a TRO without an opportunity for the opposing party to respond, the court can consider whether time is a pressing factor, as well as craft an order with a narrow scope and limited duration to justify the lack of notice." V.A. v. San Pasqual Valley Unified Sch. Dist., No. 17-cv-02471-BAS-AGS, 2017 WL 6345405, at *2 (S.D. Cal. Dec. 12, 2017).

## III. DISCUSSION

Petitioner has satisfied the requirements for a TRO

### A. Likely Success on the Merits

Petitioner has shown he is likely to succeed in his Fifth Amendment procedural and substantive due process claims. "The Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

#### 1. Procedural Due Process

Petitioner is likely to succeed on his procedural due process claim.

This Court has already concluded that the three-part test from Mathews v. Eldridge, 424 U.S. 319, 335 (1976), applies in the immigration detention context. See Y.M.C.P. v. Albarran, No. 26-cv-08341-CRB, 2026 WL 2497562, at *3 (N.D. Cal. Aug. 25, 2026); Ayala v. Albarran, No. 26-cv-09430-CRB, 2026 WL 2722780, at *3 (N.D. Cal. Sept. 15, 2026); see also Claros v. Albarran, 811 F. Supp. 3d 1062, 1066 (N.D. Cal. 2025) (collecting similar cases). Mathews requires consideration of (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. 424

U.S. at 335.

**a. Private Interest**

When immigrants are detained by the government and then released conditionally, they have a liberty interest arising from the "implicit promise" of that release. Garro Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (quoting Morrissey v. Brewer, 408 U.S. 471, 482 (1973)). That is so even when the initial decision to release an individual results from the exercise of discretion. Cordero Pelico v. Kaiser, 25-cv-07286-EMC, 2025 WL 2822876, at *6 (N.D. Cal. Oct. 3, 2025)) (citing Calderon v. Kaiser, No. 25-cv-6695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025)). Non-citizens detained at ICE check-ins after their initial release are subject to 8 U.S.C. § 1226(a), which allows for the exercise of discretion. See Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026); 8 U.S.C. § 1226(a) ("[T]he Attorney General (1) may continue to detain the arrested alien; and (2) may release the alien on . . . conditional parole."). And still, "a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." Cordero Pelico, 2025 WL 2822876, at *6.

But liberty interests do not require prior detention. Ayala, 2026 WL 2722780, at *4 (rejecting this "inverted conception of individual rights"). And immigrants who, like Petitioner, see TRO Mem. at 13, were never detained and conditionally released, can still have a protected interest in their freedom. That is because the government's decision "not to detain [someone] in the first place," can create "the same liberty interest in [that person's] continued freedom as an individual initially detained." Kharitonova v. Albarran, No. 26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026); see Jambwa v. Warden of the Desert View Annex Det. Facility, No. 26-cv-04357-PD, 2026 WL 2449550, at *1–*2 (C.D. Cal. Aug. 20, 2026) (finding that "Petitioner acquired a liberty interest because the government implicitly acquiesced to his continued release when it did not detain him after his visa expired and instead granted him employment authorization while his asylum claim was pending" and collecting similar cases); Norberto C.M. v. Warden, Cent. Valley Annex, No. 26-cv-04674-MWJS, 2026 WL 1992747, at *4 (E.D. Cal. July 9,

2026) (same). Here, Petitioner initially entered the United States on a visa, presented himself to USCIS to apply for asylum, and received a work permit. TRO Mem. at 12, 14. The government was thus undoubtedly aware of Petitioner's presence in the country and yet decided not to detain Petitioner. See Jambwa, 2026 WL 2449550, at *1–*2. Petitioner also formed the "attachments of normal life" while residing in the country for the past five years. See Morrissey, 408 U.S. at 482; see also Kharitonova, 2026 WL 531441, at *3 (noting the length of a petitioner's residency in the United States in assessing the strength of their liberty interest). Petitioner is employed in the Bay Area. Moncada Decl. ¶ 4. He lives in Daly City with his wife, his two children, and his father. Id. He is receiving routine medical care and on the waitlist for a potentially life-saving surgery. Id. ¶ 7. And he has an active asylum claim. TRO Mem. at 12. "Courts have recognized that, with the passage of time, a protectable liberty interest can 'crystallize[].'" Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) (quoting Hurd v. D.C., Gov't, 864 F.3d 671, 683–84 (D.C. Cir. 2017)); Ayala, 2026 WL 2722780, at *4 ("Courts routinely look to factors like the length of a person's residency, their work history, and their community ties . . . in assessing an immigrant's liberty interest."). All of the marks of a crystalized liberty interest are present here.

The Court thus concludes that Petitioner has a significant liberty interest in his continued freedom.

**b. Risk of Erroneous Deprivation**

"Once a liberty interest is established, the question is whether process—a hearing—would lessen the risk of an erroneous detention." Claros, 811 F. Supp. 3d at 1069. Of course it would. "'[T]he risk of an erroneous deprivation [of liberty] is high' where, as here, '[the petitioner] has not received any bond or custody redetermination hearing.'" See Singh v. Andrews, 803 F. Supp. 3d 1035, 1046 (E.D. Cal. 2025) (quoting A.E. v. Andrews, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)). That is because without a pre-deprivation hearing—"one of the most basic due process protections"—"neither party will have had an opportunity to determine whether there is

United States District Court
Northern District of California

any valid basis for the petitioner's detention." Duong v. Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025).

Civil immigration detention is "nonpunitive," Zadvydas, 553 U.S. at 690, and thus detention prior to a removal proceeding is only justified where immigrants "pose [1] flight risks or [2] dangers to the community," Rodriguez Vazquez, 183 F.4th at 1165. But there is no clear basis for determining Petitioner is either. See generally TRO Mem. Where an individual has "substantial ties to the community," concerns that they will flee are "mitigated." Harrington v. Albarran, No. 26-cv-01889-JST, 2026 WL 800113, at *1 (N.D. Cal. Mar. 23, 2026) (citing the IJ findings); see Rodriguez v. Hernandez, No. 26-cv-02076-TL, 2026 WL 2432725, at *5 (W.D. Wash. Aug. 6, 2026) (collecting cases finding that "where a Petitioner has a minor child who is a citizen of the United States, other family members in the area, steady employment, and community connections, they are not a flight risk"). Petitioner checks every box: he resides in the area, has sustained employment, a spouse and children who live in the community, a father who lives with his family and relies heavily on his care, and a serious medical condition for which he is awaiting surgery. Moncada Decl. ¶¶ 2–7. And his pending asylum claim further mediates any risk he might flee. See Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1173 (W.D. Wash. 2023) ("Defendants can point to no similar public safety concerns or flight risk that might apply to those, like Plaintiffs, with bona fide asylum claims and who desire to remain in the United States."). Nor is there evidence Petitioner is a threat to the community, since he has no criminal record. Moncada Decl. ¶ 3; Pet. ¶ 18; see Chuquillanqui v. Kaiser, No. 25-cv-06320-TLT, 2025 WL 4110424, at *9 (N.D. Cal. Oct. 2, 2025) (noting a Petitioner had "no criminal history" in determining he is not a flight risk); G.S. v. Bostock, No. 25-cv-01255-JNW-TLF, 2025 WL 3014274, at *9 (W.D. Wash. Oct. 8, 2025) (same); L.M. v. Noem, No. 25-cv-02194- RFB-BNW, 2026 WL 103231, at *13 (D. Nev. Jan. 14, 2026) (same). "Providing [Petitioner] with a pre-detention hearing will help ensure any future detention is lawful." See A.F.A.M. v. Albarran, No. 25-cv-10492-AMO, 2025 WL 3752190, at *4 (N.D. Cal. Dec. 22, 2025).

United States District Court
Northern District of California

The Court further agrees with petitioner that a post-deprivation hearing will not provide sufficient relief. See TRO Mem. at 16. Courts routinely hold that pre-deprivation hearings are necessary before an individual can be re-detained. See, e.g., M.R.R. v. Chestnut, No. 1:25-cv-01517-JLT-SKO, 2025 WL 3265446, at *11 (E.D. Cal. Nov. 24, 2025) (holding that while "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate," pre-deprivation hearings are more likely required where the alleged violation is minor); Guillermo M. R., 791 F. Supp. 3d at 1036 ("[A]bsent evidence of urgent conditions, a pre-deprivation hearing is required to satisfy due process."); Romero v. Kaiser, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[D]ue process requires a hearing before an IJ prior to redetention."). The liberty interest here is no lesser and so the same logic applies. And the baseline standard in favor of hearings prior to a rights deprivation remains. See Zinermon v. Burch, 494 U.S. 113, 127 (1990) ("the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."); see also Garro Pinchi, 792 F. Supp. 3d at 1033 ("Each of the three Mathews factors supports Ms. Garro Pinchi's constitutional right to a hearing before a neutral decisionmaker prior to any future detention.").[1]

The risk of an erroneous deprivation without a pre-deprivation hearing is therefore high.

**c. Government Interest**

Courts must consider the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

As in Garro Pinchi, 792 F. Supp. 3d at 1036, there is "no countervailing government

[1] The Ninth Circuit's holding in Rodriguez Diaz v. Garland, 53 F.4th 1189, 1210 (9th Cir. 2022) is not to the contrary. While the court there held that post-detention review was sufficient to satisfy due process concerns, the case dealt with the question of whether Mr. Rodriguez Diaz, who had accumulated "a fairly lengthy criminal record," and who had already been denied bond once, was entitled to "a second bond hearing at which the government bears the burden of proof by clear and convincing evidence." Id. at 1194, 1203. And the Court was careful to cabin its holding to not "foreclose" all other challenges. Id. at 1213.

United States District Court
Northern District of California

interest . . . that supports conducting a bond hearing only after [Petitioner] has been detained, rather than in advance thereof." There is no clear reason why the government's "interests [in detaining Petitioner] must be satisfied immediately," far be it one that outweighs the risk of an ongoing and erroneous deprivation of constitutional rights. See E.A. T.-B v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). And a generalized interest in "preventing noncitizens from remaining in the United States in violation of the law" is "not threatened if a pre-deprivation hearing is required." Id. Meanwhile, the fiscal and administrative burdens of a pre-deprivation hearing are insignificant. See Garro Pinchi, 792 F. Supp. 3d at 1036 ("Nor can the government suggest that the cost of providing such protections would be fiscally or administratively onerous."); Singh, 803 F. Supp. 3d at 1048 ("In immigration court, custody hearings are routine and impose a minimal cost." (cleaned up)).

The government's interests here are minimal.

**d. Conclusion as to the Mathews Factors**

The Mathews factors thus weigh in favor of Petitioner, and he has shown a likelihood of success on his procedural due process claim.

**2. Substantive Due Process**

Petitioner is also likely to succeed on his substantive due process claim. The reasons largely replicate those above. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. The only two justifications for immigration detention are (1) "ensuring the appearance of aliens at future immigration proceedings" and (2) "[p]reventing danger to the community." Id. "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). As already outlined, Petitioner is likely to succeed in demonstrating that he will appear at future immigration proceedings and represents no

United States District Court
Northern District of California

danger to the community. See supra Section III(A)(1)(b). His detention therefore "lack[s] a valid basis and violate [his] right to be free from impermissible government custody." See Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 939 (N.D. Cal. 2025).

### B. Other Winter Factors

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez, 872 F.3d at 994 (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)). The Ninth Circuit has specifically recognized "the irreparable harm imposed on anyone subject to immigration detention." Id. at 995. For someone like Petitioner, who risks the worsening of a life-threatening medical condition if left untreated for too long while in detention, these harms are only amplified by the "subpar medical . . . care in ICE detention facilities." See id. at 995. This harm is immediate and significant, and of the type that justifies access to relief before a hearing or full briefing. See Fed. R. Civ. P. 65(b).[2]

The balance of the equities and public interest, which merge in this case, also favor granting a TRO. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." Jorge M. F. v. Wilkinson, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); see Melendres, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district and beyond have concluded under similar circumstances, "the potential harm to [Petitioner] is significant, while the potential harm to the government is

---

[2] Petitioner's counsel, Jodan Weiner, certified in writing that they contacted the U.S. Attorney's office to notify them about their petition and inform them they would be filing a TRO, and that they received a response but not a stipulation to release Petitioner. Decl. of Counsel Jordan Weiner (dkt. 4-2) ¶ 5.

United States District Court
Northern District of California

minimal." Pablo Sequen v. Kaiser, 793 F. Supp. 3d 1114, 1120 (N.D. Cal. 2025). At most, the government faces a short delay in detaining Petitioner if it ultimately demonstrates that his detention is appropriate. The government is also not "harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983).

Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." Hernandez, 872 F.3d at 996 (quoting Lopez v. Heckler, 713 F.2d 1432, 1437 (9th Cir. 1983)).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion for a TRO.

Respondent, and their officers, agents, employees, attorneys, and any person acting in concert with them, or at their behest, and who has knowledge of this Order are **ORDERED** to immediately release Petitioner from Respondents' custody, and are **ENJOINED** from detaining Petitioner without notice and a pre-detention hearing before a neutral decisionmaker.[3] Respondents are further **ENJOINED** from removing Petitioner from this district during the pendency of these habeas proceedings. Respondents shall provide a status report confirming Petitioner's release within one day.

There is no realistic likelihood of harm to Respondents from enjoining their conduct, and so Petitioner need not give security under Rule 65(c). See Jorgensen v. Cassiday, 320 F.3d 906, 919–20 (9th Cir. 2003); Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999).

With an eye towards giving Respondents an opportunity to be heard as soon as possible, the Court also treats Petitioner's current motion as a motion for preliminary injunction, and Respondents are **ORDERED** to respond to this motion by November 19, 2026. Petitioner may file a reply to Respondents' response by no later than November 21,

[3] The Court does not take up Petitioner's invitation to treat immigration judges as biased. See TRO Mem. at 18.

2026.

The Court **SETS** a hearing by video conference on this matter for Monday, November 23, 2026, at 1:00 pm.

**IT IS SO ORDERED.**

Dated: November 16, 2026

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California